## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TSAWD HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-10527 (MFW)<br>Jointly Administered |
| TSA STORES, INC., TSA PONCE, INC., and TSA CARIBE, INC.,<br><br>Plaintiffs,<br><br>and WILMINGTON SAVINGS FUND SOCIETY, FSB, AS SUCCESSOR ADMINISTRATIVE AND COLLATERAL AGENT,<br><br>Plaintiff-Intervenor/<br>Counterclaim Defendant,<br><br>v.<br><br>M J SOFFE, LLC a/k/a M.J. SOFFE, LLC,<br><br>Defendant/Counterclaim Plaintiff. | Adv. Pro. No. 16-50364-MFW |

### M.J. SOFFE, LLC'S EMERGENCY MOTION TO COMPEL WILMINGTON SAVINGS FUND SOCIETY, FSB TO COLLECT AND PRODUCE DOCUMENTS FROM BANK OF AMERICA, N.A.

Defendant and Counterclaim Plaintiff, M.J. Soffe, LLC ("Soffe"), by and through its undersigned attorneys, hereby moves (this "Motion") pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: TSAWD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

The Debtors were formerly known as: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).

compelling Plaintiff-Intervenor, Wilmington Savings Fund Society, FSB, in its capacity as Successor Administrative and Collateral Agent for the Debtors' term loan lenders ("WSFS") to collect and produce documents in the hands of its predecessor agent, Bank of America, N.A. ("Bank of America"). In support hereof, Soffe respectfully states as follows:

## PRELIMINARY STATEMENT

As forecasted for the Court at the April 25, 2017 scheduling conference, Soffe believes that WSFS, as a plaintiff in this adversary proceeding, is obligated to produce relevant documents currently in the hands of BOA, its predecessor agent. Despite its preliminary position at the Scheduling Conference and several requests from Soffe that WSFS take an official position on this purely legal issue, WSFS only recently confirmed that it will not request, and will not produce, relevant materials from Bank of America in response to Soffe's Document Requests. Because document discovery closes in approximately one month under the current Scheduling Order, Soffe requests that the Court schedule a telephonic hearing on this discovery dispute at its earliest convenience, so that the party determined to be responsible for collecting documents from Bank of America can move forward with that collection as soon as possible.

## BACKGROUND

1.     On March 6, 2017, the Court entered its Order [Adv. D.I. 42] denying WSFS's Motion for Partial Judgment. Thereafter, the parties engaged in discussions surrounding the entry of a discovery scheduling order, but were unable to agree on a consensual schedule.

2.     At the April 25, 2017 scheduling conference (the "Scheduling Conference"), the Court approved the form of scheduling order proposed by WSFS, with modifications that extended the proposed discovery deadlines by thirty days. The Court entered the Scheduling Order [Adv. D.I. 47] (the "Scheduling Order") on May 2, 2017.

3.      One week later, on May 9, 2017, Soffe served its First Request for Production of Documents on WSFS (the "Document Requests"). As required by Local Rule 7026-1(c), the Document Requests are attached hereto as **Exhibit A**. The Document Requests instructed WSFS to produce all documents in its custody, possession or control, including "documents in the possession, custody, or control of . . . Bank of America, N.A., in its capacity as former administrative and collateral agent, under the Term Loan Credit Agreement. . . ." (the "BOA Documents"). Document Requests, Instruction A.

4.      On May 23, 2017, in an effort to present this dispute to the Court and avoid the present emergency, Soffe's counsel wrote a letter to WSFS's counsel requesting that WSFS take a formal position with respect to the collection and production of the BOA Documents within three business days. *See* **Exhibit B**. On May 31, 2017, WSFS's counsel responded by email, indicating that WSFS had no obligation to respond until the deadline set forth in the Scheduling Order and reserving all rights with respect to the issue. *See* **Exhibit C**.

5.      On June 12, 2017, WSFS served its Response and Objection to the Document Requests (the "WSFS Objection"), which objected to Instruction A "to the extent it purports to require [WSFS] to produce documents that are not in its possession custody or control." WSFS Objection, at ¶17. Presumably, this objection was intended to address the BOA Documents, although it did not specifically mention Bank of America. A copy of the WSFS Objection is attached hereto as **Exhibit D**.

6.      The parties participated in a meet and confer regarding a number of discovery issues on the afternoon of June 14, 2017 (the "Meet and Confer"). During the Meet and Confer, WSFS's counsel officially confirmed, for the first time, that WSFS does not intend to request documents from Bank of America in response to the Document Requests.

**RELIEF REQUESTED**

7.      Because this dispute is finally ripe, and the Meet and Confer has not resolved this purely legal dispute, Soffe now seeks an order from this Court compelling WSFS to collect and produce the BOA Documents.

**ARGUMENT**

8.      Soffe asserts that WSFS, as an assignee of Bank of America and a Plaintiff in this adversary proceeding, is required to produce all documents held in the possession of its assignor that are relevant to litigation it is pursuing. *See* 7 Moore's Federal Practice, § 34.14[2][c], at 34-86 (Matthew Bender 3d ed. 2016) ("The assignee of a claim in litigation has a duty to obtain and produce the same documents and information to which the opposing parties would have been entitled had the assignors brought the claim themselves."). While there appears to be no Delaware case addressing this precise issue, a number of cases, primarily from the Southern District of New York, support Soffe's position. *See, e.g., Royal Park Invs. Sa/NV v. Deutsche Bank Nat'l Trust Co.*, 314 F.R.D. 341 (S.D.N.Y. 2016) (ordering plaintiff assignee to "produce otherwise-discoverable documents and things (including electronically stored information) held by BNP Paribas to the same extent it is required to produce documents from its own files"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 129814, at *2 (E.D. Tenn. Jan. 10, 2014) ("[I]t would be wholly unfair for Plaintiffs to step into the shoes of the assignors for the purposes of bringing their claims and not also assume a claimant's attendant discovery obligations."); *Travelers Indem. Co. of Am. v. Kendrick Bros. Roofing, Inc.*, 2013 WL 6681240, at *2 (D. Idaho Dec. 18, 2013) ("As the assignee of Okland's claims, Travelers therefore steps into Okland's shoes—where it takes on both the potential benefits and obligations of an allegedly wronged party bringing a lawsuit."); *J.P. Morgan Chase Bank, N.A. v. KB Home*, 2010 WL 1994787, at *6 (D. Nev. May 18, 2010) ("It

- 4 -

would be unfair to allow JPMorgan and the current debt holders to stand in the shoes of the original lenders in order to pursue this action without requiring them to produce discovery that the original lenders would be required to produce if they had brought the action themselves."); *J.P Morgan Chase v. Winnick*, 228 F.R.D. 505, 506 (S.D.N.Y. 2005) ("It is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim."); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 149 (S.D.N.Y. 1997) (finding that it would be "patently unfair" to permit a counterclaim plaintiff assignee to continue discovery from counterclaim defendant while forcing counterclaim defendant to seek discovery from counterclaim plaintiff's assignor as a third party). *See also Firemen's Mutual Ins. Co. v. Erie-Lackawanna RR. Co.*, 35 F.R.D. 297, (N.D. Ohio 1964) (requiring an assignee plaintiff to obtain information from its assignor for purposes of responding to interrogatories).

9.      The seminal case on this issue is *Winnick*. In *Winnick*, JPMorgan, in its capacity as administrative agent under a credit agreement brought suit against officers, directors and employees of its borrower in connection with loans under a credit agreement. *Winnick*, 228 F.R.D. at 506. The defendants served discovery on JPMorgan, seeking documents and witnesses in the lender banks' possession, custody or control. *Id.* JPMorgan asserted, among other things: (a) that the documents sought were not in its custody, possession or control; (b) that it did not have the right to demand such documents under its agency agreement; (c) that the lender banks were not parties to the case; and (d) that defendants were in a better position than JPMorgan to enforce disputed discovery from any unwilling bank. *Id.* The court found that "[v]iewed from any angle, [JPMorgan]'s position cannot be correct." *Id.*

10.    WSFS, like many plaintiffs since *Winnick*, attempts to distinguish Winnick. Similar efforts in other cases have failed. *See generally Royal Park*, 314 F.R.D.; *see also Skelaxin*, 2014 WL 129814, at *1 (finding that *Winnick* was not limited to parties not subject to service of process); *KB Home*, 2010 WL 1994787, at *5-*6 (finding that *Winnick* expressly considered the burden on the assignee to obtain the requested discovery). WSFS will surely argue that the distinctions it identifies are "different" and warrant a different outcome, but those arguments must fail.

11.    Initially, WSFS has attempted to distinguish *Winnick* and its progeny by arguing that the claims at issue in this litigation did not arise until after Bank of America ceased acting as term loan agent. That is a distinction without a difference. Indeed, *Winnick* itself found that regardless of whether the assignment occurred before or after the litigation was commenced, "the prejudice to defendants is equal either way." *Id.* at 507. *See also Royal Park*, 314 F.R.D. at 347 (agreeing with *Winnick* on this issue). Moreover, as was the case in *Royal Park*, Soffe believes that "the present litigation—or litigation very much like it—seems to have been contemplated at the time of [the] assignment."[2] *Id.*

12.    Next, WSFS argues that *Winnick* and its progeny are distinguishable because the assigned claims at issue here are claims of the lender banks, and not their agent. That argument must also fail. First, the term loan credit agreement presumably requires that all claims of the lender group be asserted by the administrative agent for the lenders.[3] Because the power to assert

---

[2]    Although discovery in this adversary proceeding remains in its infancy, Soffe believes that the disputes over the proceeds of sale of consignment goods, and the Debtors' ability to use those proceeds to repay their lenders was a primary source of the conflict between the Debtors' term loan lenders and their asset based lenders, which required Bank of America to extricate itself from its conflicting role as agent for both sets of lenders.

[3]    Despite having thirty-four (34) days between receipt of the Document Requests and the filing of its objections thereto, WSFS has thus far declined to produce, or otherwise identify the location of, the term loan credit agreement, as amended in 2010. WSFS's initial disclosures referenced the Security Agreement entered into between the Debtors and BOA. That document expressly grants the "Collateral Agent," not the lenders themselves, remedies in the event of default. Because it would be highly unusual for a credit agreement to permit the individual lenders to

claims under the credit agreement was assigned from Bank of America to WSFS, *Winnick* and its progeny cannot be distinguished on this ground.

13.    Second, even if WSFS's position is correct—and it is not—then regardless of the specific agent asserting the claims, the beneficiaries of the claims would be the lenders themselves. The foregoing cases must be read to require WSFS to produce documents in the possession of the lender banks for which it serves as agent.  Upon information and belief, Bank of America itself, is (or at least was) a lender under the term loan facility.  Accordingly, WSFS should be ordered to produce the BOA Documents on this alternative ground.

14.    Third, WSFS's circular reasoning is just another attempt to get around the unfair result identified by the court in *Winnick*.  The analysis in *Winnick* focused on the unfairness of permitting a plaintiff to divorce the benefits of the claims from the obligations associated with asserting them. *Winnick*, 228 F.R.D. at 506-07.  WSFS now argues that as long as the alleged owners of the claims assign those claims to an agent, who then transfers those claims to a successor agent, any documents in the hands of the original agent need not be produced in discovery by the successor agent.  It is black letter law that documents in the hands of a party's agent are in the possession, custody and control of the party itself and must be produced in response to discovery requests. *KB Home*, 2010 WL 1994787, at *5 (finding that an "agency relationship is sufficient to find control for purposes of Rule 34").  Because *Winnick* requires WSFS to produce documents in the possession of its lenders, WSFS should also be required to produce documents in the possession of Bank of America, as former agent to the same group of lenders.

---

assert their own claims notwithstanding the presence of an agent and because the contemporaneously executed security agreement grants all rights to the term loan agent, Soffe presumes that the term loan credit agreement also provides the agent, and not the lenders, with the exclusive right to seek the relief sought in this adversary proceeding.

15.     Ultimately, WSFS has provided Soffe with no case law to support its argument that it has no obligation to produce the BOA Documents, choosing instead to rely on efforts to distinguish *Winnick*. As discussed in detail above, those efforts fall short.  Accordingly, the Court should follow *Winnick* and its progeny by ordering WSFS to produce the BOA Documents.

## LOCAL RULE 7026-1(d) CERTIFICATION

16.     Pursuant to Local Rule 7026-1(d), the undersigned certifies that a reasonable effort has been made to reach agreement with WSFS on the legal issue set forth in this Motion, but those efforts were unsuccessful.

## CONCLUSION

**WHEREFORE,** Soffe respectfully requests entry of an Order substantially in the form attached hereto as **Exhibit E,** (i) granting the Motion and (ii) granting such other and further relief as the Court deems appropriate.

Dated: June 20, 2017
      Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

/s/ R. Stephen McNeill

Jeremy W. Ryan (No. 4057)
John A. Sensing (No. 5232)
R. Stephen McNeill (No. 5210)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Telephone: (302) 984-6000
Fax:  (302) 658-1192
Email: jryan@potteranderson.com
       jsensing@potteranderson.com
       rmcneill@potteranderson.com

*Counsel to M.J. Soffe, LLC*