IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TSAWD HOLDINGS, INC., et al., | ) | |
| | ) | Case No. 16-10527 (MFW) |
| Debtors. | ) | Jointly Administered |
| | ) | |
| _____ | ) | |
| | ) | |
| TSA STORES, INC., TSA PONCE, | ) | |
| INC., and TSA CARIBE, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and WILMINGTON SAVINGS FUND | ) | Adv. No. 16-50364(MFW) |
| SOCIETY, FSB, AS SUCCESSOR | ) | |
| ADMINISTRATIVE AND COLLATERAL | ) | |
| AGENT, | ) | |
| | ) | |
| Plaintiff-Intervenor/ | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| M J SOFFE, LLC a/k/a M.J. SOFFE, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant/Counterclaim | ) | |
| Plaintiff. | ) | |

_____

**OPINION**[1]

Before the Court are cross-motions for summary judgment
filed by Wilmington Savings Fund Society, FSB ("WSFS") and M.J.
Soffe, LLC ("Soffe"), as well as Soffe's motion for summary
judgment against the Debtors.  The dispute is which party has
priority in the inventory (and its proceeds) sold by Soffe to the
Debtors on consignment.  Because the Court finds that WSFS did

_____

[1]     This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

not have actual knowledge of Soffe's consignment interest until after Soffe filed a UCC-1 financing statement on February 4, 2016, the Court will grant WSFS's motion and deny Soffe's motion with respect to goods sold before that date.  In light of that ruling and certain concessions of the parties, the Court will grant Soffe's motion for summary judgment against the Debtors, as the Debtors' preference and strong arm claims are now moot.

I.    <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding which is a core proceeding dealing with the determination of the validity, priority, and extent of liens on property of the estate.  28 U.S.C. §§ 1334(b), 157(b)(2)(K).

Soffe does not consent to entry of any final order or judgment by the Court.  (Soffe Answer. ¶3, Adv. D.I. 18.)  This Court has already concluded, however, that (1) Article III does not prohibit the Court from hearing this "core proceeding," and that (2) "Article III does not limit the Court's authority to enter final judgment on the claims and counterclaims at issue. . . ." <u>TSA Stores, Inc. v. MJ Soffe, LLC (In re TSAWD Holdings, Inc.)</u>, 565 B.R.  292, 297 (Bankr. D. Del. 2017) (distinguishing <u>Stern</u> and finding that "the action at issue.  .  .  would necessarily be resolved in the claims allowance process") (citing <u>Stern v. Marshall</u>, 564 U.S. 462, 564, 131 S.Ct. 2594 (2011)).

2

II.   BACKGROUND

    A.   Factual History

On March 2, 2016, (the "Petition Date") The Sports Authority Holdings, Inc. and its affiliates (collectively, the "Debtors") filed voluntary petitions under chapter 11.  The Debtors were national retailers of sporting goods and active apparel.

Prior to the petition date, the Debtors were the borrowers or guarantors on a $300 million term loan facility (the "Term Loan Agreement").  Bank of America, N.A. ("BOA") through its Agency Management Team and Wholesale Leveraged Finance Unit was the Term Loan Agent, until it was succeeded by WSFS on or about December 31, 2015.  (Healy Dep. 31:5-10, Jan. 17, 2018, Adv. D.I. 143-2; McNeil Decl. Ex. C, Adv. D.I. 143-3; Strickert Dep. 11:12-13:13, 38:16-25, Feb. 23, 2018, Adv. D.I. 151-19.)  The Term Loan Agreement was secured by a lien on, inter alia, all the Debtors' inventory and proceeds thereof.  (Orenstein Decl. Ex. G at 2, Adv. D.I. 36-7.)  As of the petition date, approximately $276.7 million in principal was outstanding under the Term Loan Agreement.

As part of their business, the Debtors developed a program for the sale of goods on consignment.  To participate in the program, vendors entered into a "pay by scan" deal sheet specifying whether they would be paid on a cost or retail split basis.  Beginning in 2010, Soffe entered into such an arrangement

with the Debtors.  (Williams Dep. 17:23-18:4, Feb. 6, 2018, Adv.
D.I. 143-7; McNeil Decl. Ex. F at 4, Adv. D.I. 143-6.)  The
Debtors paid Soffe an agreed upon amount after a sale of the
consigned goods and retained the remaining sale proceeds.
(McNeil Decl. Ex. F at 4, Adv. D.I. 143-6.)

Soffe did not file a UCC-1 financing statement (or notify
the Term Loan Agent of that filing) until February 4, 2016, one
month before the Petition Date.  (McNeil Decl. Exs. I & J, Adv.
D.I. 143; Williams Dep. 25:12-16, Feb. 6, 2018, Adv. D.I. 148-9.)

B.  Procedural History

Early in the bankruptcy case, an issue arose as to the
Debtors' authority to pledge or sell consigned goods in their
possession.[2]  Pending the filing of (and ruling on) an adversary
proceeding to determine respective rights to the consigned
goods,[3] the Court permitted the Debtors to sell the consigned

---

[2]    See Motion for Interim and Final Orders (A) Authorizing
the Debtors to (I) Continue to Sell Consigned Goods in the
Ordinary Course of Business Free and Clear of All Liens, Claims
and Encumbrances and (II) Grant Administrative Expense Priority
to Consignment Vendors for Consigned Goods Delivered
Postpetition; and (B) Grant Replacement Liens to Consignment
Vendors with Perfected Security Interests in Consigned Goods
and/or Remit the Consignment Sale Price Arising from the Sale of
Consigned Goods to Putative Consignment Vendors and Objections
thereto.  (D.I. 9; Agron Obj., D.I. 102; Gordini Obj., D.I. 110;
Wigwam Mills Obj., D.I. 608; ASICS Am. Corp. Obj., D.I. 644;
Casio Obj., D.I. 646; Ameriform Acquisition Co. Obj., D.I. 656.)

[3]    See In re Whitehall Jewelers Holding, Inc., Bankr. No.
08-11261, 2008 WL 2951974, at *4 & *6 (Bankr. D. Del. July 28,
2008) (holding that a bankruptcy court cannot allow the sale of
consigned goods as "property of the estate" under section 363

4

goods so long as they complied with the terms of the consignment agreements, including making payments to the consignors.[4]  The final order preserved WSFS's rights, as Term Loan Agent, including the right to recoup any payments made to the consignors from the sale of the consigned goods if it were determined that WSFS has a superior security interest in them.[5]

On March 16, 2016, the Debtors commenced this adversary proceeding against Soffe, seeking declaratory relief on competing claims to the Soffe consigned goods (and their proceeds), shipped and delivered prepetition by Soffe to the Debtors valued at approximately $5,421,528 (the "Disputed Goods").  WSFS intervened in the adversary proceeding and seeks a declaration that it has a perfected security interest senior to Soffe's interest in the Disputed Goods and seeks disgorgement of their proceeds.  (Adv. D.I. 17.)  Soffe filed an answer and counterclaim seeking a declaration that WSFS's security interest did not attach to the Disputed Goods and, if it did, that WSFS's lien is subordinate to Soffe's interest.  (Adv. D.I. 27 at §§ 89, 96.)

On July 19, 2016, WSFS filed a Motion for Partial Judgment on the Pleadings.  (Adv. D.I. 34.)  On March 6, 2017, the Court

_____

without first determining that it is property of the estate through an adversary proceeding).

[4]    Interim Order, March 11, 2016, D.I. 278.

[5]    Final Order, May 3, 2016, D.I. 1704.

denied that motion on the grounds that an issue of fact existed: whether Soffe's consignment interest is governed by Article 9 of the Uniform Commercial Code (the "UCC"). <u>TSA Stores, Inc. v. M J Soffe, LLC (In re TSAWD Holdings, Inc.)</u>, 565 B.R. 292, 303-304 (Bankr. D. Del. 2017).

On April 13, 2018, the parties filed cross-motions for summary judgment seeking a determination of their respective interests in the consigned goods and their proceeds. (WSFS Motion, Adv. D.I. 147; Soffe Motion, Adv. D.I. 141.) Soffe also sought summary judgment and dismissal of the Debtors' claims under sections 544 and 547 of the Bankruptcy Code. Briefing is complete, and the matter is now ripe for decision.

III. <u>DISCUSSION</u>

    A.   <u>Standard of Review</u>

Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56(c) of the Federal Rules of Civil Procedure which sets forth the applicable summary judgment standard. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c). Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). <u>See also Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (holding that the party moving for summary judgment has the initial burden of

demonstrating the absence of a dispute of material fact).
Admissions in pleadings, affidavits, discovery, and disclosure
materials on file, including all factual inferences derived
therefrom, are viewed in the light most favorable to the
nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 247 (1986).

    B.   Consignment under the UCC

    WSFS argues that Article 9 of the UCC governs the priority
of the competing interests in the Disputed Goods.  It contends
that its interest is superior to Soffe's interest in the Disputed
Goods delivered prior to February 4, 2016, because its financing
statement was filed first.  N.Y. U.C.C. § 9-322(a)(1).  Soffe
responds that Article 9 does not apply to its interest because
BOA had actual knowledge of its consignment interest and that
knowledge is imputed to the Term Loan Lenders.

    Section 9-102(a)(20) of the UCC defines "consignment" as:

"Consignment" means a transaction, regardless of its
form, in which a person delivers goods to a merchant
for the purpose of sale and:
    (A) the merchant:
        (i) deals in goods of that kind
        under a name other than the name of
        the person making the delivery;
        (ii) is not an auctioneer; and
        (iii) is not generally known by its
        creditors to be substantially
        engaged in selling the goods of
        others.
    (B) with respect to each delivery, the
    aggregate value of the goods is $1,000 or
    more at the time of delivery;
    (C) the goods are not consumer goods

7

immediately before delivery; and
(D) the transaction does not create a
security interest that secures an obligation.

N.Y. U.C.C. § 9-102(a)(20) (section 9-102 was previously codified at section 2-326).[6]

Soffe concedes that its agreement with the Debtors meets all the requirements of section 9-102(a)(20) except the requirement that the Debtors' creditors did not have knowledge of the consignment.  Soffe does not argue that the Debtors were "generally known" by their creditors to be "substantially engaged" in selling goods on consignment.[7]  In re Valley Media, Inc., 279 B.R. 105, 132 (Bankr. D. Del. 2015) (holding that a debtor with 17.03% of its inventory sold on consignment does not qualify as "generally known" to be "substantially engaged" in selling goods of others).

Instead, Soffe argues that the Term Loan Lenders had actual knowledge of its consignment relationship, which satisfies the section 9-120(a)(20)(A)(iii) exception and takes the relationship outside the purview of Article 9.  See e.g., Eurpac Serv. v. Republic Acceptance, 37 P.3d 447 (Colo. App. 2000) (holding that a creditor who has actual knowledge of a debtor selling goods belonging to others satisfies the generally known and substantial

---

[6]    The WSFS Security Agreement is governed by New York law.  (Orenstein Decl. Ex. G. at 24, Adv. D.I. 36-7.)

[7]    The Debtors sold less than 20% of their goods on consignment.  (Stip. of Facts ¶ 3, D.I. 1400.)

engagement exception); <u>In re Key Book Serv., Inc.</u>, 103 B.R. 39, 43 (Bankr. D. Conn. 1989) (finding that the policy consideration for the actual knowledge exception was satisfied because the secured creditor's loan with the debtor came after the debtor entered into the consignment agreement and the secured creditor knew of that agreement while negotiating its loan with the debtor).

WSFS argues preliminarily that actual knowledge does not satisfy the exception and, therefore, does not take the relationship outside the scope of Article 9.  <u>See, e.g.</u>, <u>Russell v. Mountain Nat'l Bank (In re Russell)</u>, 254 B.R. 138, 141 (Bankr. W.D. Va. 2000) (reasoning that a bank's knowledge of a consignment does not preclude it from asserting rights under the UCC when the bank did not engage "in any affirmative conduct to promote those arrangements or lull the consignors to fail to protect themselves"); <u>In re State St. Auto Sales</u>, 81 B.R. 215 (Bankr. D. Mass. 1988) (determining that a secured creditor was not equitably estopped from asserting its interest in consigned goods even though it had actual knowledge of the debtor's consignment arrangements).

In a related opinion issued today, involving a dispute between WSFS and another consignor to the Debtors, the Court concludes that if a consignor can establish that the Term Loan Lenders had actual knowledge of its consignment relationship with

the Debtors before the Term Loan was made, Article 9 will not apply to its interest in the consigned goods. <u>TSA Stores, Inc. v. Performance Apparel Corp. (In re TSA Holdings, Inc.)</u>, Adv. No. 16-50317 (Bankr. D. Del. Nov. 26, 2018). Therefore, the only issue the Court will address here is whether the Term Loan Lenders had actual knowledge of Soffe's consignment relationship with the Debtors.

C.   <u>Actual Knowledge</u>

Soffe is a wholly-owned subsidiary of Delta Apparel, Inc. ("Delta"). (Williams Dep. 67:5-68:15, Adv. D.I. 144-7.) Prior to the Petition Date, Delta and its subsidiaries executed a Loan and Security Agreement dated May 27, 2011, with Wells Fargo Bank, National Association ("Wells Fargo"), as Administrative Agent for the lenders. (Hipsman Dec. ¶ 2-3, Feb. 26, 2018, Adv. D.I. 148-14.) BOA, through its Business Capital Group, was a co-lender on the Delta group loan. (Hipsman Dec. ¶ 1-3, Adv. D.I. 148-14.) Soffe argues that BOA - while Agent for the Term Loan Lenders to the Debtor - acquired actual knowledge of Soffe's consignment relationship with the Debtors in its capacity as a co-lender to Soffe's parent, Delta. Soffe seeks to impute that knowledge to the Term Loan Lenders. <u>See, e.g.</u>, <u>Affordable Home Enters. v. Nelson</u>, No. 91C-08-024, 1994 WL 315227, at *7-9 (Del. Super. May 25, 1994) (holding that an agent's knowledge of material facts related to its duties as an agent is imputed to its principals).

10

WSFS responds that (1) BOA never acquired actual knowledge of Soffe's consignment relationship in its capacity as a lender to Soffe's parent, (2) even if it had, BOA had a duty to keep that information confidential under the Delta loan agreements, (3) knowledge BOA learned as a lender to Soffe's parent cannot be imputed to it as Agent for the Debtors' Term Loan, and (4) any knowledge BOA may have learned as a lender to Soffe's parent cannot be imputed to the Term Loan Lenders themselves because BOA had no duty as their Agent to disclose it to them.

      1.   <u>Knowledge BOA acquired as lender to Soffe's parent</u>

Soffe claims that BOA knew that the Disputed Goods were sold on consignment to the Debtors from documents it received as a lender to Soffe and its parent, Delta. As part of that loan arrangement, Delta prepared and submitted monthly borrowing base reports to the lenders. (Hipsman Dec. ¶ 1-3, Feb. 26, 2018, Adv. D.I. 148-14; Grow Dep. 80:17-25, Feb. 6, 2018, Adv. D.I. 143-7.) The borrowing base report included a list of specific assets excluded under the Delta loan, including a line item titled "TSA Pay By Scan." (McNeil Decl. Ex. N, Adv. D.I. 143-14.) Steven Hipsman, a Senior Vice President in BOA's Business Capital Group, reviewed the monthly borrowing base reports in connection with the Delta loan. (Hipsman Dec. ¶ 1-3, Adv. D.I. 148-14.) Hipsman acknowledged that he was aware that Soffe sold some goods on consignment but testified that he did not specifically know that

11

Soffe sold goods on consignment to the Debtors.  (Id.)

The Court concludes that Soffe has failed to prove that BOA
had actual knowledge of Soffe's consignment relationship with the
Debtors.  The line item on the borrowing base certificate is
ambiguous (referring to "TSA" rather than the Debtors' full
names) and the BOA officer reviewing it testified that he did not
know that Soffe was selling consigned goods to the Debtors.  See,
e.g., Nat'l Bank of N. Am. v. Newmark (In re Newmark), 20 B.R.
842, 861 (Bankr. E.D.N.Y. 1982) (rejecting imputation where there
was not a clear showing that the knowledge at issue was "actually
present" in the agent's mind at the time the agent effected a
transaction on behalf of the principal); JBGR, LLC v. Chicago
Title Ins. Co., 128 A.D.3d, 900, 901, 903 (N.Y. App. Div. 2015)
(holding knowledge cannot be imputed because defendant failed to
establish that the knowledge an agent had of a prior declaration
was in his mind at the time of the current transaction).

Soffe seeks to distinguish the Newmark case because in that
case the agent acquired its knowledge prior to the formation of
an agency relationship with the principal.  Newmark, 20 B.R. at
860 (information provided to an agent nearly one year prior to
the relevant transaction was not imputed to the principal).
However, the Court reads nothing in Newmark to suggest that a
mere overlap in time is sufficient to "clearly show" that
knowledge is "actually present" in the agent's mind at the time

12

of the transaction for imputation to occur.  <u>Newmark</u>, 20 B.R. at
861.  Rather, Soffe must show that any knowledge of Soffe's
consignment relationship was actually in BOA's mind at the time
the Term Loan was incurred.  It has failed to do so here.

    2.  <u>Effect of confidentiality agreement</u>

    Even if BOA had acquired actual knowledge of Soffe's
consignment relationship with the Debtors, the Court concludes
that it gained that information as a lender to Delta, in its
Business Capital Group.  It was not at liberty to share that
information with the BOA Wholesale Leveraged Finance Unit or
Agency Management Team, which were the two BOA divisions
administering the Debtors' Term Loan Agreement.  The Delta Loan
Agreement required that "each Lender .  .  . shall use all
reasonable efforts to keep confidential .  .  . any non-public
information supplied to it by any Borrower pursuant to this
Agreement .  .  . ."  (Orenstein Decl. Ex. A. at § 13.5(a), Adv.
D.I. 164-1.)

    "[A] principal is not affected by the knowledge of an agent
who is privileged <u>not to disclose</u> or act upon it and who does not
disclose or act upon it."  Restatement (Second) of Agency § 281
(1958) (emphasis added).  <u>See, e.g.</u>, <u>O'Malley v. Putnam Safe</u>
<u>Deposits Vaults, Inc.</u>, 458 N.E. 2d 752, 758 n.8 (Mass. App. Ct.
1983) (holding that knowledge of vice-president of company
regarding contents of a safe deposit box was not imputed to

13

company where the vice president received that information with
express instructions to keep it confidential).

       3.   <u>Imputation of actual knowledge to BOA generally</u>

Even if BOA had acquired actual knowledge of Soffe's
consignment relationship with the Debtors and was at liberty to
share it, Soffe must still establish that BOA did share it.  WSFS
argues that BOA is a large company and that the department
handling the Soffe loan was distinct from the departments
handling the Debtors' Term Loan.

Soffe argues that the Third Circuit has recognized that
actual knowledge obtained by an employee of a company when acting
in one capacity may be attributed to the company generally,
including when acting in a separate capacity.  <u>See, e.g.</u>,
<u>Browning v. Fid. Tr. Co.</u>, 250 F. 321, 324 (3d Cir. 1918) (finding
that information acquired by an employee of a company will be
attributed to the company generally); <u>Wachovia Bank Nat'l Assoc.
v. WL Homes LLC (In re WL Homes LLC)</u>, 534 Fed. App'x 165, 169 (3d
Cir. 2013) (finding that knowledge that is obtained by an agent
in one capacity is imputed to the principals that it represents
in a separate capacity, so long as the information is material to
the agent's representation of that principal).

The Court finds that these cases do not support Soffe's
broad contention.  Although the Court in <u>Browning</u> found that a
bank teller's knowledge of a default must be imputed to the trust

department of the bank, it concluded that it was not "actual knowledge" sufficient to find the trustee was grossly negligent or acted in bad faith.  250 F. at 326.

Additionally, the Court finds that the WL Homes case is distinguishable because that case involved imputation of the knowledge of one person to himself, where he was serving as a "dual agent."  WL Homes, 534 Fed. App'x at 169-70.  In that case, the Court found that knowledge of the parent company was "present in the mind" of the subsidiary because the person with that knowledge was contemporaneously an officer of the subsidiary and the parent.  Id. at 170.

In this case, the Court finds that Soffe's evidence is insufficient to establish that BOA, as the Term Loan Agent, had actual knowledge of Soffe's consignment relationship with the Debtors.  At most Soffe sought to show that Hipsman, a BOA Vice-President in the Business Capital Group, knew that Soffe sold goods on consignment to the Debtors.[8]  However, Hipsman and the Business Capital Group played no role in administering the Debtors' Term Loan Agreement.  The latter was handled by distinct BOA departments, the Wholesale Leveraged Finance Unit and the Agency Management Team.  (Hipsman Dec. ¶ 4, Feb. 26, 2018, Adv. D.I. 148-14; Strickert Dep. 38:16-20, Feb. 23, 2018, Adv. D.I.

---

[8]    Although as noted above, the Court does not find that Soffe established this fact.

151-19.)  Therefore, there is no basis for finding that any
knowledge Hipsman may have acquired was actually known to BOA in
its capacity as the Term Loan Agent.

        4.   Imputation of BOA's knowledge to Term Loan Lenders

Even if BOA had acquired actual knowledge of Soffe's
consignment relationship with the Debtors, was at liberty to
share it, and it was known to BOA generally, Soffe must establish
that that knowledge was also known to the Term Loan Lenders.
Soffe argues that BOA, as Term Loan Agent, had a duty to share
the information that it obtained regarding the consignment
relationship with the Term Loan Lenders.  WSFS argues that that
knowledge cannot be imputed to the Term Loan Lenders because BOA
had no duty to disclose that information to them.

Soffe is correct that under general principles of agency
law, an agent's knowledge of material facts related to its duties
as agent is imputed from the agent to its principals.
Restatement (Third) Agency § 5.03 (2005).  An agent has a duty
"to provide the principal with facts that the agent knows, has
reason to know, or should know when . . . the agent knows or
has reason to know that the principal would wish to have the
facts or the facts are material to the agent's duties to the
principal."  Restatement (Third) of Agency § 8.11 (2006).
Delaware courts will impute an employee's knowledge to his or her
corporation generally when such knowledge is material to the

employee's duties, i.e., "the knowledge has some significance
which the employee could be reasonably expected to perceive."
Affordable Home Enters. v. Nelson, 1994 WL 315227, at *7-9 (Del.
Super. May 25, 1994) (internal citation omitted) (concluding that
a corporation will be bound by information obtained by its agent
that would be viewed as "important in view of the agent's duties
and prior knowledge."). Moreover, an agent has a duty to
disclose all material information, or information "that may
affect [its] principal's decision [making process]." In re
Marriage of Cloney, 110 Cal. Rptr. 2d 615, 624 (Cal. 2001).

However, where an agency is a creature of contract, that
contract defines the scope of the agent's duty. See Restatement
(Third) of Agency § 8.07 (2006) ("An agent has a duty to act in
accordance with the express and implied terms of any contract
between the agent and the principal."). In this case, the Term
Loan Agreement states that the Term Loan Agent "shall not have
any duty or responsibility to provide any Lender with any other
credit or other information concerning the affairs, financial
condition or business of any Loan Party that may come into the
possession of the [Term Loan Agent]." (McNeil Decl. Ex. D. at
§ 9.07, Adv. D.I. 143-4.) Moreover, the Term Loan Agreement
provides that the Term Loan Agent "shall not, except as expressly
set forth herein and in the other Loan Documents, have any duty
to disclose . . . any information relating to the [Debtors] or

17

any of its Affiliates that is communicated to or obtained by the Person serving as the Administrative Agent or any of its Affiliates in any capacity." (<u>Id</u>. at § 9.03(c), Adv. D.I. 143-4.)

Therefore, the Court concludes that even if BOA in its capacity as a lender to Soffe's parent had acquired actual knowledge of Soffe's consignment relationship with the Debtors that could be imputed to BOA generally, that knowledge cannot be imputed to the Term Loan Lenders, as BOA had no duty to give that information to them under its written agreement.

Because the Court finds that Soffe has failed to establish that BOA had actual knowledge of its consignment relationship with the Debtors or that it could be imputed to the Term Loan Lenders, the Court concludes that the relative interests of Soffe and the Term Loan Lenders are governed by Article 9 of the UCC.

D.    <u>Priority of Interests in the Consigned Goods</u>

WSFS contends that each of the requirements for attaching its security interest to the Disputed Goods is satisfied.  Soffe does not dispute this.

Under section 9-203(b) of the UCC, a security interest is enforceable with respect to collateral if "(1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; [and] (3) . . . (A) the debtor has authenticated a security

18

agreement that provides a description of the collateral . . .
.″ N.Y. U.C.C. § 9-203(b).  In this case, (1) value has been
given by the $300,000,000 Term Loan provided to the Debtors; (2)
the Debtors had rights in the collateral pursuant to section 9-
319(a); and (3) the Debtors signed a security agreement in favor
of the Term Loan Lenders which included the Disputed Goods and
their proceeds.

Under section 9-322(a), conflicting perfected security
interests rank according to priority in time of filing or
perfection.  N.Y. U.C.C. § 9-322(a)(1).  However, section 9-
324(b) provides an exception where a party obtains a purchase
money security interest (such as a consignment interest) in
inventory that is already subject to a prior perfected security
interest.  Id. at § 9-324(b)(1)-(4).  In that case, the later
filing party has priority in goods delivered after it has met the
requirements of section 9-324(b).  Id.

Here, while WSFS perfected its blanket security interest in
the consigned goods before Soffe perfected its interest, WSFS
concedes that Soffe met the requirements of section 9-324(b) when
it filed its financing statement on February 4, 2016, and sent a
notification letter to WSFS regarding the same.

Therefore, the Court concludes that WSFS' blanket security
interest in inventory has priority over Soffe's interest in the
consigned goods that Soffe delivered to the Debtors before

February 4, 2016.  Soffe has a perfected interest with priority over WSFS's interest in the consigned goods that were delivered to the Debtors _after_ Soffe properly perfected its interest on February 4, 2016.

Therefore, the Court will grant summary judgment for WSFS as to the goods delivered prior to the UCC-1 filing on February 4, 2016.

E.   Debtors' Preference and Strong Arm Claims

Soffe also asks the Court to grant summary judgment and dismiss the Debtors' preference and strong arm claims.

With regard to the Debtors' preference claim, Soffe argues that it filed its UCC-1 to protect its consignment interest in the $580,207.53 worth of goods that it shipped to the Debtors _after_ filing its UCC-1, not to protect the consigned goods it shipped to the Debtors _prior_ to the UCC-1.  Soffe, therefore, argues that its UCC-1 filing cannot constitute a preference because it was not a transfer on account of an antecedent debt. 11 U.S.C. § 547(b)(2).

The Debtors do not dispute that Soffe has a perfected security interest in goods delivered to the Debtors _after_ the UCC-1 was filed.  The Debtors argue only that if Soffe is asserting a perfected security interest in the consigned goods delivered to the Debtors _before_ it filed the UCC-1, then that claim is avoidable as a preference.

Because the Debtors concede that Soffe is perfected as to goods delivered after the UCC-1 was filed, the Court concludes that the Debtors' preference claim is moot.  The Court further concludes that the Debtors' strong arm claim against Soffe is also moot given the Court's earlier conclusion that WSFS has an interest superior to Soffe's interest in the Disputed Goods delivered before Soffe's UCC-1 filing.  See Murphy v. Hunt, 455 U.S. 478, 481 (1982) (finding a case to be moot where a party lacks a cognizable interest in the outcome).

Accordingly, the Court will grant Soffe's motion for summary judgment and dismiss the Debtors' claims as moot.


IV.   CONCLUSION

For the reasons stated above, the Court will grant WSFS's, and deny Soffe's, motion for summary judgment with respect to goods sold by Soffe on consignment before February 4, 2016.  The Court will grant Soffe's motion for summary judgment against the Debtors.

An appropriate order follows.


Dated: November 26, 2018            BY THE COURT:

                                    Mary F. Walrath
                                    United States Bankruptcy Judge

21